We'll hear argument first this morning in Case 14-280, Montgomery v. Louisiana. Mr. Bernstein? Mr. Chief Justice, and may it please the Court, the issue is whether to decide the question of Miller's retroactivity in this case or in a federal habeas case such as Johnson v. Manis, No. 15-1 on this Court's docket. In today's case, there is no jurisdiction over that question because the point of Section 1257 is to enforce the Supremacy Clause, and the Supremacy Clause states that when, quote, the laws of the United States, unquote, apply, quote, the judges, and these are the key words, in every state shall be bound thereby. There is no such thing as supreme federal law that depends on whether a particular state voluntarily makes federal precedence binding. When a state does that, when a state voluntarily adopts non-binding federal precedence, that creates no right under federal law, which is what 1257 requires, and Michigan v. Long does not apply. So how would you describe the adequate and independent state grounds on which this decision rested? I would say that the lack of a binding federal law question is an antecedent requirement, to borrow the terminology of the SG's brief, before you get to the adequate and independent state ground analysis. So why don't we have jurisdiction to answer that question? You certainly have jurisdiction to answer the question whether Teague is constitutionally required in state collateral review courts. The second part of our brief said why it is not constitutionally required in state collateral review courts, and that's basically this Court's precedents from Danforth back to the beginning in DeSist and in Kauffman have said that the Teague, what have become the Teague exceptions, are matters of equitable discretion and not matters of the Constitution, and the federal habeas statute on its face only applies in federal court. So the federal habeas court can grant relief if relief is warranted under the Teague exception. If a state says we acknowledge that we are holding a prisoner in contravention of federal law, but we choose to do nothing about it, then the answer is federal habeas corpus, there is not a second answer that the state can be required under the supremacy clause under its own procedures to enforce the federal law. And if I were to take, to argue that second position, I'm not quite sure what case I would have to support me. Well, I think that Your Honor's opinion for the Court in Martinez v. Ryan, 132 Supreme Court at 1319 to 1320, suggested that there are advantages to citing the federal habeas right in the federal habeas statute rather than what the Court called a freestanding constitutional claim. A major advantage here is if you say that the state courts are bound by the Teague exceptions, by the Constitution, then when it goes to federal habeas, there will be very little differential EDBA review. If you say that the redress question, as the rationale of Danforth indicated, in state court is a matter of state law, then when the issue goes to federal habeas, EDBA will not apply because the state court will not have decided the federal issue. And that is a major difference. You would actually be weakening the federal habeas statute to recognize jurisdiction in this case. And this Court will benefit from having de novo percolation in the lower federal courts, the lower habeas courts, all of which will be out the window if there's jurisdiction in this case, because the lower federal habeas courts will only be able and the courts reviewing them on appeal to apply the highly deferential EDBA review. In effect, are we saying that the Supremacy Clause binds the States only in direct criminal proceedings? No. Is that another way of phrasing your argument? It would be that the Supremacy Clause only binds the States in direct proceedings and in collateral proceedings where it's an old rule, because that's the equivalent of a direct proceeding. But if you are talking about the retroactivity of a new rule, then that's where the two Teague exceptions apply. They apply to new rules, they apply to collateral review, and those are based in statutory equitable discretion rather than the Constitution. But the Court has already held that both direct review and the application of old rules present federal questions. Sotomayor. I would like to differentiate this case from Standard Oil. Because in Standard Oil, the issue was the underlying status of the Federal Government arm, and the Court said that question is controlled by Federal law. Standard Oil is like Miller itself, where the issue was what does the Eighth Amendment require. That's a Federal constitutional issue. It applied. In Standard Oil, as a combination of statute, regulations, and Federal common law, Federal law controlled the question. Here, the statute doesn't apply in State court, as Danforth and numerous other cases have held, like the Federal rules of evidence don't apply in State court, even though many courts follow similar provisions and certainly follow Federal precedents in interpreting those similar provisions. But we did say that that State could define the exemption any which way it wanted. Correct. And so it could — it's almost identical here. We would announce what the Federal law is, send it back. The State has already said it's going to follow T, but I guess it might or might not be free to change its mind about doing that. I think the difference, and what makes this case special, is that this Court has held since Murdoch v. City of Memphis, almost 150 years ago, 87 U.S. at 326 to 327, that the 1267 jurisdiction is question by question. It is not like 1331 case by case. It is question by question. And I do not believe the Court has jurisdiction to skip over the question of whether Federal law applies and then answer the hypothetical, if Federal law applied, what would it be? I think the question of whether Federal law applies is a jurisdiction. How — let's think of the first T exception. Suppose substantive matters. Suppose that many States had sedition laws that make certain conduct unlawful, so there are 1,000 people in prison. This Court, in a new rule, holds you cannot criminalize that behavior. All right. What is the law that would make that retroactive to people in prison? It sounds to me that it isn't like some kind of statutory discretion. Rather, there are human beings who are in prison who are there without having violated any valid law, because it was always protected by the First Amendment. And if that's right, then it's the Constitution, the Due Process Clause, that says they are being held, even though they committed the crime 22 years ago, they are now being held in confinement without due process of law, because you cannot criminalize their behavior. You see where I'm going? Yes. That being so, it's a Federal constitutional rule, the exceptions of Teague. Teague drops out of the case. The only question is whether to satisfy the two exceptions. Well, in your hypothetical, respectfully, I don't think that would be a new rule. I've made it a new rule. For purposes of my hypothetical, I'm making it a new rule. If it were a genuinely new rule, then under Danforth, and going all the way back, Justice Harlan's opinion in Mackey said we're not creating the substantive exception because the Constitution requires that. Danforth was a case saying that the States could be more generous. It wasn't a case. This is a case that the opposite of being generous. Can they be more stingy? And I cannot find anything in Harlan. Maybe I'll read it again. But I can't find anything there, nor can I find anything in Danforth that answers the question. So I thought it is a new question. Hence, that question I posed to you because I want to get your response. I don't think you can answer it by means of precedent. I think you have to try to figure it out without the help of precedent. Well, if it is a new rule, the Court has held, and cited precedent, Linkletter has held that retroactivity on collateral review is not constitutional. That aspect might not be true. That's true, but then we have Teague, and Teague is saying we don't like Linkletter. But Teague said we don't like Linkletter. All right. But you're saying that we have, then maybe that's wrong. I mean, why doesn't it violate the Constitution to hold a person in prison for 20 years for conduct which the Constitution forbids making criminal? Well, it does violate the Constitution. Well, it wasn't criminal at the time. I mean, it wasn't prohibited by the Constitution at the time he was convicted, right? Fair enough. That would be the reason. Fair enough. But the Constitution, according to the cases, is satisfied by the Federal habeas remedy. I think this is where Schweiker v. Is there anything else you can say? Because I can make — you know, I could say witches, being a witch. There were some people in Salem who were imprisoned for being a witch. And lo and behold, in 1820, it was held by this Court that that violated the Constitution. Now, you see, I just make a more outrageous example of the same thing. And what I want you to say, okay, I got your point. It didn't violate the Constitution at the time. I've also got the point. You have some authority. Anything else? This Court has been reluctant, even when there was a violation of the Due Process Clause, to create a judicial remedy, an implied judicial remedy, on top of the Federal statutory remedy. That's Schweiker v. Chiliki, cited in our briefs. And I think you should be especially reluctant — But that's not what's happening here, Mr. Bernstein. I mean, if you assume the premise of Justice Breyer's question, which is that there is a constitutional violation in keeping somebody in prison for some conduct that can't be criminalized, the State has set up a collateral review mechanism. We're not asking it to set up a new mechanism that it hasn't had before. It has a collateral review mechanism. And the only question is whether it's going to comply with Federal constitutional law in that collateral review mechanism. And the other question is whether that issue of retroactivity is itself a Federal constitutional issue. If it is, obviously there's jurisdiction. If it is not, I would submit there is not jurisdiction, and that the proper remedy is Federal habeas. If I may reserve the remainder of my time. Thank you. Thank you, counsel. Mr. Patience. Mr. Chief Justice, and may it please the Court. Miller v. Alabama established a new substantive rule prohibiting mandatory life without parole for juveniles, which should be applied retroactively. This Court has jurisdiction to hear Henry Montgomery's claim because the Louisiana Supreme Court relied exclusively on Federal jurisprudence. In Miller, this Court held that mandatory life in prison was unconstitutional. It also held that life in prison would be an uncommon, rare sentence even today. Isn't it just like a State saying, we have a Fourth Amendment, and the Federal Constitution has a Fourth Amendment. We are going to apply our own Constitution, but in applying it, we will follow the Federal precedent. I think we would say in that case, the case has been decided on the State constitutional ground, even though the State court in interpreting that ground is looking to Federal decisions. In this case, Your Honor, the Louisiana Supreme Court did not state that it was exercising any independent grounds at all. Under Michigan v. Long. I thought the case it cited said that. I thought it cited an earlier Louisiana Supreme Court case, which made it very clear that it was following the Federal rule as a matter of discretion, and not because it had to, and it could, in a later opinion, decide not to follow Federal law. It is my interpretation of that earlier case that the Louisiana Supreme Court said, we have a choice, and they made the choice to apply Teague. In fact, they said in that opinion, we are dictated by the Teague analysis, and that's what was done in this case. Under Michigan v. Long. Didn't they not say in Taylor that they were not bound to follow Teague? Didn't they say, we're going to follow Teague, but we want to make it clear that we're not bound to do that? They did say that. They never retracted that, have they? Correct. But the choice itself is not necessarily a matter of state law. While the Supreme Court had the authority to make that decision, it said, we believe by choosing Teague, we believe that is the better law, and therefore, we will follow the Federal guidelines from Teague, the Federal jurisprudence in doing so. And I believe that under Michigan v. Long, unless they state a clear and independent ground, this Court can conclusively presume that they apply Federal law as they believe this Court would apply. I thought it's unless they clearly state otherwise, we will assume that they're applying Federal law. And here they did clearly state otherwise. They said, we don't have to follow Federal law, but we're going to model our state law on Federal law. It seems to me that satisfies the exception requirement of Michigan. It is my opinion that Michigan v. Long indicates the reverse, Your Honor, that the State must say, we are following State law in making this decision. We are applying State law rather than Federal law. Well, they did say that here. They said that. This is a matter of State law. We don't have to follow Teague. But we choose to as a matter of State law. I thought that's what they said. And I believe that that's sufficient to indicate to this Court that it is applying Federal law. It is not applying State law. But, Mr. Pleasons, I think what people are saying to you is that this is different from your standard Michigan v. Long question. This is a different question. It's a State that says, we're not bound to follow Teague. We know we can do something different. But we want to follow Teague. That's what we want to do. And then, in all its particulars, all right, and then the question is, if the State commits to following Teague, it doesn't think anybody else has committed it, it self-commits to following Teague and to following Federal law, then what happens? Is there enough of a Federal question to decide this case? Now, that's not a Michigan v. Long question. It's more like a Merrill Dow question or something like that, where Federal law is the State has chosen it, but it's just part and parcel of the claim because the State is so committed to following Federal law in all its particulars. I agree with Your Honor. And even in Danford, this Court said that the question of retroactivity is a pure question of Federal law. I'm sorry. Why don't you finish? That's the answer to your explanation or hypothetical, that you said if the State decided that they were choosing Federal law, then what's the next step? And the next step, the question is retroactivity, which both the majority and the dissent in Danford said the question of retroactivity is a pure question of Federal law. Federal statutory law, right? I thought that was the point of Danford, that the reason the States can go back to what the Constitution is, is because we're talking about the Federal habeas statute, right? That's correct, Your Honor. But even in Yates, this Court said that on State habeas, if the State considers the merits of the Federal claim, and the merits of this claim are, is Mr. Montgomery serving an unconstitutional sentence? Is Miller retroactive to address the fact that he's serving an unconstitutional sentence? How do you deal with Mr. Bernstein's point that your client would be worse off if you are correct? That is, if the question comes up on Federal habeas, then the Federal court decides it without any input problem. But if the State court goes first, then the Federal review is truncated. That would be my understanding, Your Honor, that while Mr. — while Henry — while jurisdiction in this Court does not depend on what has occurred so far, it depends upon what this Court does decide. But again, whether he can go to Federal court or this Court doesn't affect this case today. And the question is — But if — how do you answer the argument, all right, suppose you're right, but your victory is going to leave your client in a worse position, because when he gets to Federal court, he will be saddled with INFA? Well, not if this Court rules it has jurisdiction and makes Miller retroactive, then obviously at that point he would not be going to Federal court. And the question is, is Mr. Montgomery being held unconstitutionally? Because this Court in Miller said that a mandatory life in prison sentence is unconstitutional because it fails to address the fact of the matter that this Court believes kids are different. Mr. Pleasant, on the jurisdictional point, let me see if I understand what you're arguing. A lot of State rules of procedure are modeled after Federal rules of procedure. A lot of State courts simply follow the Federal rules, but they follow it as a matter of choice and not because they think they're bound by the Federal rules. So let's say that there's a disagreement in Federal court about what Federal rule of evidence 403 means. The State court says, well, you know, we're going to follow the Federal rule, and we federal courts of appeals is the Second Circuit. So we're going to follow the Second Circuit's interpretation of Federal rule 403. Would we have jurisdiction to review that decision as a decision on a question of Federal law? If it was clear to this Court that the State court made a conscious choice and sent enough of a signal to this Court that it was adopting Federal law to use as State law. But in this case, there is no indication that the State Supreme Court of Louisiana was making that decision. They said that our analysis is dictated by teeth. And in doing so, they found that they would not apply Miller retroactive. And that's the real issue of this case. Suppose we hold that. We can review the, we have jurisdiction because the State court said it was going to follow Teague. And then we go on and we say that under Teague, Miller can be applied on collateral review. And then the case goes back to Louisiana Supreme Court, and they say, well, you know, we said previously in Taylor we were going to follow Teague, but that was based on our understanding of Teague at that time. But now that we see what has been interpreted to mean by the U.S. Supreme Court, we're not going to follow Teague. Then what would happen? I think Louisiana would be bound to follow this Court's ruling, as you said, for Teague. Why? Because it said that we would voluntarily follow it in Taylor? That bound them? I think they made the conscious choice to follow this Court's laws, this Court's jurisprudence. In doing so, it must follow this Court's jurisprudence. As I said before, they changed their mind. They have now chosen the course not to follow our jurisprudence. What forces them to stay where they were? It's a matter of State law. They've decided we're going to change State law. But they didn't do that in this case, Your Honor. They didn't. Well, not yet. But if we agree with you, and then we send it back, and they look at it and they say, oh, if that's what Teague means, we're not going to follow Teague. What stops them from doing that? And doesn't that make us look foolish? No, it doesn't, Your Honor. Do we make decisions that can be overruled by somebody else? If a State considers the merits of a Federal claim, it must grant the relief that Federal Court gives it. But the question is, what's a Federal claim? Why didn't you cite Standard Oil v. Johnson in your response to the questions from Justice Scalia and Justice Alito? I believe my friend, the Solicitor General... Do I have... Perhaps. ...the name of the case? Yes, Standard Oil v. Johnson. That was a case cited by the Solicitor General. I believe my friend from the Solicitor General's office can probably answer that question a little bit better. The point I'd like... Are you asking us to decide the question left open in Danford? Danford said that it was a minimum... There could be a constitutional minimum, but it wasn't answering that question. Are you asking us to answer that question? I'm saying, Your Honor, I don't believe you need to get to that question because... But let's assume we do... All right. ...whether Michigan v. Long Beach Court has jurisdiction. I'll reserve the balance of my time. Thank you, Counsel. Mr. Dreeben. Thank you, Mr. Chief Justice, and may it please the Court. This Court does have jurisdiction to decide the question of Miller's retroactivity because Louisiana has voluntarily incorporated into its law a wholly federal standard. And in this Court's decisions in Standard Oil, Merrill Dow, three affiliated tribes, and most recently Ohio v. Reiner, the Court has recognized that when a state chooses to adopt federal law to guide its decisions and binds itself to federal law, there is a federal question. But they can change their mind, right? You said voluntarily chose to follow it. That's right. They can voluntarily choose. They're not going to follow it anymore. That's right. And the same is true in any Michigan v. Long case. What Michigan v. Long said is that this Court has jurisdiction under Section 1257 to resolve state court resolutions of federal law. And it will presume that a state constitutional decision of a newer image, say of the Fourth Amendment, will be binding. But recognize that the only circumstance in which the Court will not treat federal law as governing both questions is when the state makes clear that it would reach the same result under state constitutional law as it did under federal law. It did not preclude the option of the state going back and reaching a different decision, once enlightened by this Court, as to the content of federal law. Standard Oil is completely clear on this. It says the state chose to use federal law to determine whether a federal post-exchange was a federal instrumentality. And we're going to correct its understanding of federal law. But on remand, the state can now, freed from its misapprehensions of federal law, decide what it thinks state law requires. And if it does that, then there may be a federal constitutional question. I have a question. It should be pretty elementary. I mean, I looked at the Indian case, and that seemed a little far out. It definitely gives you support on your statement here. Suppose you took Justice Scalia's example. We have Iowa State Rule 56. We interpret Iowa State Rule 56 the same way as the federal rules of civil procedure. That's our rule. And now, this is what it means in that case. And they say, but we're doing it under Iowa State rule. Now, you say we can review that because they said that Iowa State rule is the same as the federal. Is that right? And how do you fit that in the words of 1257? Well, I doubt that that would satisfy the Court. There's a theoretical answer, and then there's a practical answer. Let me give the practical answer first. The States that copy the federal rules of evidence and the federal rules of civil procedure pretty uniformly say we will treat federal precedent as guidance in our decisions for its persuasive value. They recognize that there are State rules of procedure and State rules of evidence that will belong to the State. Well, they say in a particular case, it's guidance. It's great guidance. We agree. Our interpretation is the federal interpretation. Well, I think that it is. Now, can we review that? Because, in fact, it wasn't the federal interpretation. But can we review it? Yes or no? There is a distinction between this case and that that may suggest that this case, the Court has jurisdiction over, and that one, the Court does not. So you say the Court does not in the example of the federal rules of civil procedure that Justice Scalia gave? I think this is a stronger case. I'm doubtful that the Court would have jurisdiction or choose to exercise it because I accept for premises of the argument Your Honor is hypothetical, but in the real world it doesn't happen. Well, but when you say that that's a doubtful case, I think you are implicitly acknowledging that if we adopt your argument, we are going to get that case and lots of similar cases. And we are going to have to parse the words that were used by the State Supreme Court. Well, we are following, we are going to be guided by it, we are going to be strongly guided by it, we are going to adopt it. We are going to get all of those cases. Why should we go down that road? Well, I think the Court When there is a perfectly available and possibly superior remedy available to the Petitioner by filing a federal habeas petition. So there are several reasons, Justice Alito. First of all, I don't think that it is that going to come up in that way to this Court because that's not the way States treat their own rules of procedure. I don't think it will be very difficult. There is a principle in the Court's cases that when Federal law has been adopted as Federal law, the Court will review it even if the State could have chosen a different path. So Mr. Dreeben, what's the problem? I mean, did you misspeak? When Federal law is adopted as State law, the Federal courts can review it. Isn't that what you meant to say? I mean, you're very careful and you don't make mistakes. Well, I think, Justice Kennedy, this is what I'm trying to say. You said when State law adopts Federal law as Federal law, then there is review. Okay. The State has adopted Teague for a reason that does not exist in any of these civil procedure cases, and that is that the State knows that that Federal law will be applied to the very case in a habeas case. So the State has decided consciously to synchronize its law with the law that it knows will be applied, and this actually serves a very important Federalism purpose. The State says if we have to rectify in a constitutional error, in our case, that's become final, we would like the opportunity to do it. And if the Federal habeas court is going to treat this decision as retroactive, we would like the first crack at it. You're saying hooray that the Federal habeas court will thereafter be bound by it. No. Because the State got there first. No. There's an elementary reason why that's not so, Justice Scalia, and this answers Justice Ginsburg's question earlier. 2254d applies to State determinations on the merits. That's the only time that the deference provision kicks in. And a determination under Teague is a threshold determination that comes before the decision on the merits. This Court has said that in any number of cases. It's not a merits resolution of a case. So deference to a State determination on retroactivity would never occur. What I — I was just going to suggest maybe we hear a little bit more on the merits. Certainly, Mr. Chief Justice. The rule in Miller v. Alabama, in our view, is a substantive rule because it goes far beyond merely regulating the procedure by which youths are sentenced for homicide crimes. It compelled the State to adopt new substantive sentencing options, an option that is less severe than life without parole. The only other time that this Court has ever invalidated a mandatory sentencing provision was Woodson v. North Carolina in 1976. So we went something like 36 years before we had another decision that concluded that the law must change to accommodate the compelling interest in having the characteristics of youth that mitigate culpability considered in the sentencing process. Would it be enough — is it enough if the States simply say, okay, with respect to people who have been mandatorily sentenced to life without parole, we are going to provide parole? Yes. I believe that it would be. That would be the same remedy that the Court ordered in a Graham v. Florida case for — which is the case that held that youths who did not commit homicide but are convicted of other crimes cannot be sentenced to life without parole at all. And the Court's remedy for that problem could either be a sentence of term of years, but it could also be simply converting the life without parole sentence to a life with parole sentence. So that would be — Mr. Friedman, how do you explain how your articulation of your test wouldn't apply to the guideline changes in Booker that we made? So I think, Justice Sotomayor, the key difference is that with respect to the guidelines, there was always a minimum and a maximum set by statute. And the guidelines, even when they were mandatory, did not preclude judges from sentencing outside the guidelines depending upon the presence of aggravating or mitigating factors that weren't taken into account. And as Justice Alito's opinion for the Court in the United States v. Rodriguez recognized, even the top of a mandatory guidelines range was not truly mandatory. So even under the mandatory guidelines, which for Sixth Amendment purposes were treated as if they established elements of the offense, for the purposes that we're looking at here, they are not mandatory in the same way. So that Booker brought about a procedural change. What is the substantive difference — pardon the use of that word — between your formulation and Petitioner's formulation? He says this is substantive because it did away with mandatory life imprisonment. You're articulating it slightly different. Tell me what you see as the difference and why your articulation. Justice Sotomayor, I don't think that there is any substantive, to use the word, daylight between Petitioner's position and ours. The description of the crime at issue as punishable by mandatory life imprisonment and treating that as a category I think sums up the reality of what is happening. We broke it out into its component parts because I think it facilitates the analysis of it to understand that Miller does have a procedural component. Sentencing courts must now consider the mitigating characteristics of age. But it also, and more fundamentally in our view, contains a substantive component that required a change in the law. Now, the change here was expanding the range of outcomes. Previously, when this Court has analyzed substantive changes in the law, there have been changes that restricted the form of outcomes. Say, for example, in Justice Breyer's hypothetical, forbidding punishment at all. But I think that if you trace back the origins of the substantive category to Justice Harlan's opinion in Mackey, this is still faithful to what Justice Harlan had in mind. Justice Harlan said the clearest case of an injustice in not applying a rule retroactively is when it puts off limits altogether of criminal punishment. He did not say that it was the only case. And I think that if you consider what is going on in Miller and the reasons for the rule, the Court made very clear that it believed that of the 2,000 people that were in prison and under mandatory life for juvenile homicide, the Court believed that that penalty was frequently disproportionate, that it would be uncommonly imposed in the future, and that it was not a sentence that was consistent in most cases with the mitigating characteristics of youth that have been recognized in Roper and in Graham and then in Miller. Would it be accurate to say that a rule is substantive if it makes a particular outcome less likely or much less likely or much, much less likely than was previously the case? Probably the last, Justice Alito. When the Court characterized substantive rules most recently in its Summerlin opinion Is there a difference between much less likely and much, much less likely? Well, I would put it in the words that the Court has used previously. The Court has said that a substantive rule creates a significant risk that the person is serving a sentence that's not appropriate for that person, maybe not even legally available for that purpose. It did not say absolutely conclusively proves it. It said significant risk. And in contrast, when the Court has talked about procedural rules, rules that govern the manner in which a case is adjudicated, it has said that the likelihood or potential for a different outcome is speculative. And I think if you put this case on the speculative, significant risk axis, this case falls in the significant risk domain precisely because of the reasons why the Court said it was deciding Miller. The reasons why the Court decided Miller had to do with the reduced culpability of youth and their capacity of youth to mature, change, and achieve a degree of rehabilitation that is consistent with something less than the most harsh sentence available for youths who commit murder. Terrible crime, but still the harshest sentence the Court thought would be reserved for the worst of the worst, which is in fact what Louisiana said when it amended its statutes substantively to conform them to Miller. It said life without parole should be reserved for the worst offenders who commit the worst crimes. And so when you combine the fact that this is not a rule that only governs procedure, doesn't just govern evidence, it also mandates changes in outcomes as an available option with the very genesis of the Miller rule in a conclusion that for the people in this class, the appropriateness of the punishment of the harshest degree, life without parole, will be relatively uncommon. It seems clear that the Miller rule falls on the substantive side of the axis rather than on the procedural side of the axis. Have any States treated Miller as retroactive? Yes. State habeas? Yes. The majority of States, it's close call. I think it's maybe about 10 to 7 or 10 to 8. But the majority of States that have reviewed this have concluded that Miller is retroactive. Most of them have done it as a matter of substantive law. There are a couple of opinions that talk about the watershed exception, which is not the way that we think that this case should be analyzed. But not only the States have done that, but the United States has taken that position with respect to the juveniles that were sentenced before Miller to life without parole as a mandatory sentence. And in the resentencings of those that have taken place so far, it's only been about 10. But those defendants have almost uniformly received sentences that are terms of years significantly shorter. So what is the population we're dealing with if most States do apply Miller retroactively? I think it was the figure of 2,000 people with life without parole. I haven't broken it down numerically. May I answer, Mr. Chief Justice? I have not broken it down numerically, Justice Ginsburg. But Michigan has not applied it retroactively, and it has a very large population of juveniles who are in the Miller class. And I don't think that Pennsylvania has resolved it, certainly not favorably yet for the defendants. Thank you, counsel.  Mr. Chief Justice, and may it please the Court, I was going to begin by saying I would proceed directly to the merits, but I gather from the drift of the argument that the Court has serious questions about jurisdiction. And so I'd like to briefly begin there. We are in an odd position with respect to jurisdiction because we won below and we'd win in the Fifth Circuit on federal habeas, which is sound that Miller is not retroactive. Why, then, do we not contest jurisdiction? We believe, and still believe, that this is a straightforward case. Not, Justice Kagan, it's not a standard Michigan v. Long case, but it's an interwoven case, meaning that the state court took Teague lock, stock, and barrel. Now, there's no doubt, Justice Scalia, that in the Taylor, in the previous Louisiana Supreme Court opinions, that the state said we were voluntarily adopting Teague. There's no doubt about that. So we think the question is whether that raises the possibility of an advisory opinion from this Court. And why do we say it doesn't? Well, because in cases like Coleman v. Thompson and Ake v. Oklahoma, the Court said where the federal law holding is integral to the state court's disposition of the matter, there's no risk of an advisory opinion. And later in Coleman, the Court said only if resolution of the federal issue, quote, could not affect the judgment is there the risk of an advisory opinion. So here we don't think there's the risk of an advisory opinion. Of course, it is within the realm of possibility. We doubt it's going to happen, but it could happen, that on remand the Louisiana Supreme Court could say, well, we've seen what you think about Teague, and we're going to adopt our own retroactivity standards, as some states have done. They could do that. The question is, does that make this Court's opinion advisory? And we think not. The Solicitor General, the Assistant Solicitor General, has talked about cases like Standard Oil v. Johnson, where the state was under no obligation to tether its state law to federal standards, and yet the Court didn't. I would say so, though. In Standard Oil, this is a quote from the opinion, the relationship between post-exchanges and the government of the United States is controlled by federal law. Right. That's right. My point, Justice Scalia, is that that was embedded in a tax-exemption statute.  and the exemption sequestered them. That would have been true no matter what the state did, right? Well, no, the state — We're deciding a question of federal law that would have applied on its own. Well, with respect to Standard Oil, I think my point is that the state didn't have to make its tax-exemption status turn on a federal question. It did, and so the Court had jurisdiction to resolve it. Well, don't you think that the state made its tax-exemption law turn on federal law because there are federal constitutional requirements in that area? Could the state have taxed — I mean, there was the question of whether or not the supremacy clause would permit the state to tax sales to the post-exchanges. I think that's possible, but this Court didn't make its jurisdiction dependent on that, and so take a case like Ohio grinder. In the provision I just quoted, it said that the relationship between post-exchanges and the government of the United States is controlled by federal law. That's what our opinion said. Well, so take the — the Assistant Solicitor General brought up the case of Ohio v. Reiner, where a state made its transactional immunity statute turn on the validity of a Fifth Amendment privilege. This Court addressed that embedded and discrete federal issue. And, Mr. Duncan, isn't it quite similar when Justice Scalia used this controlled language, the Louisiana Supreme Court has used similar language? It's dictated by Teague. Now, it's only dictated by Teague because they've chosen to make it dictated by Teague, but once that choice has been made, all outcomes are dictated by Teague. It's the same issue. Well, we think — we agree with that. We think it's binding, quote, unquote, binding within the meaning of binding federal law because the state has chosen to do it, and it's never shown that it wouldn't do it. You know, so we think that — look, if the Court disagrees with us on that, we don't take the — Well, on Ohio v. Reiner, which you just cited, was there any other way in which the State could have obtained review of the State Supreme Court's erroneous determination that the witness in question there did not have a Fifth Amendment privilege because she said that she didn't commit the crime? I don't think so, because this — Do you think that's not a distinction between that case and this case? Well, if — if the Teague — if the Teague standard is a discrete Federal standard that the State has made — has incorporated, then the only way — well, the Louisiana Supreme Court could — the defendant could go to federal habeas, sure, and you could get an interpretation that way, but it doesn't seem unless the difference between federal habeas and review of the State Supreme Court decision makes any difference with respect to this Court's jurisdiction, it might mean that this Court would wait, you know, for a — for, you know, a federal case that way. But in this case, and this goes to the second reason why we haven't strongly congested jurisdiction at all, because there is a robust split on this direct — on this specific issue that extends to something like 21 State and Federal courts. They're all deciding the same Federal issue. So it seems to us that as a practical matter, this Court ought to weigh in. It's going to weigh in sooner or later. It's going to weigh in either on a Federal habeas case or from a State court. Now, we weigh in when we have jurisdiction. You think that doesn't matter at all? No. Of course jurisdiction matters, Justice Scalia. Of course. So what you just said doesn't really make much sense. Well, I think it makes sense — Let's get in there quickly whether we have jurisdiction or not. You're not saying that, are you? Well, no, we're not saying that. We're not saying that. We're saying if the Federal issue is genuinely interwoven with State law and there's no independent State grounds, then this Court has jurisdiction to decide the question. Otherwise, it's going to have to wait for a Federal habeas case. Proceeding to the merits. In Miller, this Court was invited — We clearly have jurisdiction, don't we? I'm just trying to figure this out in my mind. We have jurisdiction where there is a person, that's the defendant, and the defendant says the Court's decision, that's your Court's decision, is contrary to the Constitution or statute of the United States. That's just what they say. So we have jurisdiction to hear the case. Now, the question is how do we dispose of a case in which we have jurisdiction? We agree with that. And in three instances, I guess, the Court has done, in disposing of such a case, what the Solicitor General says. Namely, they have said, we are not going to say whether he's right in saying it's contrary to the Constitution. That's because there might be an adequate State ground, there might not be. Their adequate State ground was one that was elucidated or explained as being, flowing from a certain interpretation of Federal law. We will say their interpretation of Federal law was wrong, and now we'll send it back to see what they do. Is that right? That's our position. And by the way, What is the Federal law that you're talking about? The application of Teague to Miller. That's not a Federal law. The Federal habeas statute is a Federal law, right? And Teague is an interpretation of that Federal law. Was that Federal law at issue in this case? The Teague standard. Of course it wasn't. But the Teague standard, the Teague exceptions could well be constitutionally required. Teague doesn't apply. That's why we don't take a position on it. You want us to hold that in this case? We do not want you to hold that in this case. Did we say the opposite in Danforth? Or did the majority say the opposite in Danforth? You left the question open in Danforth. Could you tell me why you would think that something like Atkins would not be retroactive to states? As a compulsion, meaning not as by election, of Teague retroactivity. That is a difficult question that we don't take a position on. But to answer your question, Justice Sotomayor, the argument goes that Danforth made clear that Teague is an equitable interpretation of the Federal habeas statute. It's not constitutionally binding on the states. And that the Court left open whether the exceptions are binding. But the exceptions were part and parcel of Justice Harlan's macky understanding of how he thought Federal habeas ought to apply. And so whereas Atkins, I mean, Atkins creates a binding constitutional right. The question of remedy, though. The question is, is the State constitutionally bound to offer that remedy? And this Court has recognized in cases like Pennsylvania v. Finley, for example, that states have wide discretion in structuring their post-conviction. And the next point, though, has to do with how. That has to do something different. Because as Justice Breyer pointed out, you have wide discretion to structure it as you want. But if you've structured it in a way that you're going to say, I'm offering due process, isn't there a check, a substantive check by due process that you have to offer the minimum? Well, I mean, that is the question. So this Court has found that there's a substantive check on due process in Griffith where we're talking about direct review. When we're talking about collateral review, I mean, our view, although we haven't taken a position on it, collateral review is a different animal for purposes of. But we have any number of cases where States have viewed the exceptions as controlling the fact that they have to offer the constitutional minimum. But this Court has never held that. It hasn't yet. The question is, why shouldn't we? I understand. That's really a serious question. It is a serious question. And again, we have not taken a position on that question because we feel that this case is interwoven with Federal law as a matter of State retroactivity. In Miller, this – on to the merits. In Miller, this Court was invited to categorically bar the penalty of life without parole for juveniles who commit murder, but it decided not to do so. Now, that decision leads directly to the conclusion in our view that Miller is not a substantive rule under Teague's first exception. Consideration of the Teague framework, Teague policies, and Teague precedent points instead to the conclusion that Miller is a procedural and not a substantive rule. So we think Summerlin most helpfully sets out the framework that ought to govern this question. Mr. Duncan, can I give you just a hypothetical? Sure. I mean, suppose that there's a State and it has a mandatory minimum for theft. It says the mandatory minimum for theft is 20 years. And suppose a court looks at that and says, you know what, that's incredibly disproportionate to a lot of theft. And so strikes the mandatory minimum, says you just can't have a mandatory minimum like that, make it lower. Would that be a substantive ruling? We don't think so, Justice Kagan, because the mandatory aspect of it goes to the manner of imposing a penalty. It does not go to the manner of imposing. It says nothing about the manner of imposing. What it does is it just increases the range of sentencing possibilities. It actually leaves it to the courts. It says absolutely nothing about what factors ought to be taken into account, nothing about that at all. All it says is you can't have a mandatory minimum of 20 years for theft, make it lower. Well, so if in that hypothetical that doesn't go to the manner of imposing the penalty, then I'd have to say no, because Miller made very clear that the mandatory aspect of the penalty goes to the manner of imposing the penalty, not to any substantive. So if you're saying no, that's different, because there was something else in Miller, there is something else in Miller. There is a bunch, there is a process component of Miller, no question about it, where the court says what courts are supposed to look at are the characteristics of youth and are supposed to try to figure out whether these terrible crimes are functions in part of immaturity or not, whether you really are looking at an incorrigible defendant. So there is that process component. But that process component does not take away the fact that there is a completely separate self-sufficient component as to what the range of punishment has to be that's completely on all fours with the hypothetical that I gave you. Well, Justice Kagan, the relevant difference in terms of the Teague analysis is that this Court in Miller did not take the punishment of life without parole, the distinct category of punishment of life without parole, off the table. This Court has never held that a non-categorical rule is substantive under Teague, and it's done that for good reasons, because that would fly in the face of the policies that informed the Teague analysis. No, you're exactly right. It did not take the LWOP punishment off the table. But similarly, in my hypothetical, a 20-year sentence for death has not been taken off the table. What the Court has done is to say there have to be other options. There have to be an option of 10 years or 5 years or 2 years, whatever it is. So they've expanded the range of possibilities. They've just made the sentence different, because a sentence is defined both by its upper end and by its lower end. And so they've made the sentence different. I understand that. But making the sentence different doesn't necessarily make it substantive under the Teague framework. Here's another way of looking at it. The defendant, a juvenile murderer who committed murder and is serving a life without parole sentence today, pre-Miller, is not facing a punishment that the law cannot impose on him. And we know that from Miller, because Miller said the Court's decision does not preclude that punishment. And so that goes to finality. The finality interests underlying convictions do not yield where the State still has the power to impose that punishment. Finality interests yield, just as Harlan explained in Mackey and this Court adopted in Teague, finality interests yield only where the State lacks the power. That's where the finality interests crumble, so to speak, because the State no longer can impose that category of penalty. So that would go for Roper. It would go for Graham. It would go for Justice Breyer's sedition or which crimes. If somebody's in jail because they were accused of being a witch, then the State has no finality interest in keeping that person in jail. But by the same token, if the punishment is death for a juvenile, the State has no finality interest in doing that. So leaving the punishment on the table is crucial. If he doesn't take it off, it's not substantive. The second policy reason for Teague is avoiding the adverse consequences of retrial. And we think Miller is even more clearly not substantive under that standard because categorical rules apply retroactively, just as Harlan explained, because they don't carry the adverse consequences of retrial. They don't make you go back and redo the trial and unearth old facts and drain State resources and come up with distorted retrials. Miller, by its nature, envisions a fact-intensive hearing that considers multiple characteristics at the time of the trial. Well, you don't have a distorted new trial if you just grant a parole hearing. That's right. That's right. But that's, of course, not what Miller would require. That's what Graham would require, Justice Kennedy, because Graham is obviously a categorical rule that says you can no longer impose that punishment, so you have to give him a parole hearing or some meaningful way of release. Miller is about the step before whether to give a parole hearing, whether the person can be eligible for parole at the outset. That's the inquiry that we're talking about in Miller. And that's quite different from a parole hearing. The fact of the matter is, though, is that applying Miller retroactively inevitably turns the retroactive Miller hearing into a parole hearing, which shows that it doesn't quite work in terms of adverse consequences. Are you going to say at some point you started, suppose that you look at the watershed procedural change. My impression from the case you cited, Summerlin, is that deciding whether that's retroactive has two parts. I think we were unanimous on this point. Two parts were, is it implicit in the concept of ordered liberty? Here it would seem to be because it's applicable to the states. And the second is, is it central to an accurate determination that life without parole is a legally appropriate punishment? And the rule that a mandatory can't exist is central to making that punishment. That was the whole point of the Miller opinion. So if that's the correct analysis for watershed rule, procedural rule that's retroactive, if I'm right about that, why doesn't it fit within that category? Well, let's take the first one. It's not just implicit in the concept of ordered liberty. The way that the watershed rule has been stated, the first prong of it is it has to alter our understanding of bedrock procedural elements necessary to fundamental fairness. And this would be a strange case to find that in because Miller itself doesn't represent a bedrock revolution in sentencing practices. It takes the sentencing practice from another area and puts it in this new area. So it's an incremental change in that sense. It's not a wholesale discovery of a new bedrock procedural element the way we had in a case like Gideon v. Wainwright. And I think this Court explained in Wharton v. Bocking that it's not enough that the rule be fundamental in some abstract sense, right, but it has to itself represent a change in bedrock procedural understandings, and we don't think Miller does that. We also don't think it's necessary to an accurate determination of its sentencing. It would enhance the accuracy of the sentence, but it's not necessary. And the other point there is this Court has never held that a pure sentencing rule can qualify under watershed because, after all, this Court has on many occasions said that a watershed rule is necessary to the accurate determination of guilt or innocence. And here we're talking about a sentence. So we agree with the United States that watershed procedural analysis is not the way to go here, but it does raise an interesting question in Summerlin because, after all, we do part company quite strongly from the United States when the United States says we need an outcome-expanding alteration to the definition of substantive rules under Teague. We say that's not just a slight tweak to Teague. What that is is a change in the understanding of what a substantive rule is. Substantive rules under Teague analysis have never depended on the frequency with which new outcomes might come about under the new procedures. In fact, in Summerlin, and this goes back to my original point about the framework, Summerlin explained that a criminal defendant under a procedural rule does have the opportunity of getting a more lenient outcome under the new procedures. So, and nonetheless, Summerlin said that such procedural rules are not applied retroactively. And so, as Justice Alito, as you were saying, the difference between a substantive or procedural rule under Teague is not whether it's very likely or very, very likely to result in a new outcome. It's about whether the new rule categorically removes the power of the State to impose a category of punishment. That's what a categorical rule does. That is not what Miller does. Right? Miller may express an expectation about the way that Miller hearings will come out, and that may or may not come to pass in the future. Who knows? Right? We can point to cases where criminal defendants have had Miller hearings and have still received life without parole, and I can point to several in particular from the State of Louisiana under its new Miller procedures. But the point being is that the idea of changing outcomes, which is what the United States' entire argument depends on, is built into the procedural side of Teague and not the substantive side. So the substantive side is about... Kagan. I think not. I think by your own definition, this fits on the substantive side. You said you categorically remove a certain outcome. And that's exactly what Miller does. As long as you understand a sentence, which I think you agreed with, as defined both by its upper end and by its lower end, effectively what the Court said in Miller was that that sentence cannot control for juveniles, that there has to be a different sentence, one that includes other punishments... Well, there's no doubt that... ...that increases the range. Right. Miller quite clearly said, as you know, Justice Kagan, that it does not categorically bar a penalty. And what did it mean by that penalty? It allows something within the range, but it has completely changed the range that is given for any juvenile defendant. Well, we think that's... And the range is important. It's not just the top end. This is what we said in Allain, that you can't think about a sentence without thinking about both parts of the sentence, both the maximum and the minimum. And when you decide whether a substantive change in that sentence has been made, you look at both, the maximum and the minimum. Well, look, I hope this is responsive. I mean, I think after Miller we would see two categories of punishment on the table. We would see a life without parole category and a life with parole, for example. But my point is, is that Miller doesn't ban the first category, and that is determinative for whether something is a substantive rule or not. I would not describe changing the range of sentences available as changing the sentence. It puts another one on the table, I think, as the most use. It doesn't change the sentence necessarily. Yes. But this is what we said... You still get the same sentence. You can still absolutely still... This is what we said last year. We said it's impossible to dissociate the floor of a sentencing range from the penalty affixed to the crime. And similarly, we said criminal statutes have long specified both the floor and ceiling of sentencing ranges, which is evidence that both define the legally prescribed penalty. That is the penalty, is the range. Life without parole has the same floor and ceiling, of course. It's got the same floor and ceiling. What Miller does is create the procedural circumstances for putting a new penalty on the table, which is the point of the United States argument. There's a new possibility. And our point is to say that putting a new possibility on the table doesn't take away the State's power to impose the old category of punishment. Mr. Winsor, I know that we didn't ever look at this issue. I'm sorry. Reading the wrong one. I apologize. But do you really think that any State would have not applied Woodson retroactively? They all did. Probably not, Your Honor. But that, of course, is a pre-T case. It raises the question, is Woodson substantive or procedural under T? And our argument is it's a procedural rule. It's a procedural rule. It just said you couldn't have mandatory death penalties. Just like here, you can't have mandatory life without parole. It required an individualized sentencing process, which we say is a procedure. And to give sentences less than mandatory death. But they could have still given death. They certainly could have. So the question is whether it is substantive or procedural under the Teague rubric, which, of course, it was a pre-Teague case. And I think the most we can say about it is it's not substantive under Teague, for the reasons that we've said. Now, raise the question, is it a watershed procedural rule? Perhaps that's all. Well, that's the language. Bedrock, I don't think, is the right language, because that was the language he referred to in a sentence in Mackey. Correct. I've just been looking it up. But then in Teague itself, Justice O'Connor tries to get the right words. And what she ends up with here is that the procedural is the first test, the first part can be addressed by limiting the scope of the second exception, that's the watershed rule, to those new procedures without which the likelihood of an accurate conviction is seriously diminished. Okay. And that's joined by the Chief Justice, Justice Scalia, and the courts. I can't remember. So is it seriously diminished? Now, we read through Miller. It's pretty hard to say. I mean, my goodness, Miller is just filled with paragraph after paragraph about how a mandatory requirement for life without parole fails to take account of all the characteristics or many characteristics inherent in youth. And it's pretty hard to come away from that without thinking, gee, accuracy under a mandatory life without parole does seriously diminish the accuracy of imposing life without parole when you apply the mandatory to a youth. But in every Eighth Amendment sentencing rule goes to accuracy in some significant way. No, no, but you have to say the accuracy is seriously diminished. And she says, then, I don't think there will be too many such cases. Well, again, we haven't talked about the capital sentencing cases, but take a case like O'Dell where the capital jury was not informed of the defendant's parole and eligibility while considering its future dangerousness. I mean, one could easily say that the accuracy of the resulting death sentence under the old rule was seriously diminished. And yet this court said in O'Dell that that is not a watershed procedural rule. And you can go down the line with all those cases, the Beard case and the Sawyer case. Those are cases in which a defendant could have said, well, seriously, you know, seriously diminished accuracy, and yet the court found no watershed rule. And, of course, the bedrock is what the word that this court has used in referring to that exception, particularly in Wharton v. Barclay. Is there any watershed procedural rule other than Gideon? Well, this court has said it's doubtful that any will emerge. And so we think this case is an implausible case for a new watershed rule to emerge since this rule, and back to the bedrock point, is not creating a bedrock – it's not a revolution in bedrock understanding of procedure. It's an incremental step in sentencing juveniles. So, you know, if a case like Crawford is not a watershed procedural rule, then it's difficult to understand how this one would be. We have one brief that tells us that this court has never barred punishment as cruel, unusual under the Eighth Amendment, but refused to make the decision retroactive. Well, we disagree with that. There are cases that take the case that refused to make retroactive the rule in Caldwell v. Mississippi. That's an Eighth Amendment case that goes to the accuracy of a capital jury sentence and determination of death, and this court didn't make that rule retroactive and found that it was procedural and non-watershed at the same time. So we take issue with that. Just a few more words about the United States' proposed expansion of Teague. It would shift the whole focus of what a substantive rule is from the categorical nature of a rule to the effects of a rule. And so any defendant in these capital sentencing cases we've just been talking about, O'Dell and Sawyer and Beard, would now have the argument handed to them by the United States' new rule that says, well, that new rule gave me the opportunity for a better outcome. I might have not gotten the death penalty if my jury had been properly instructed. We don't understand how the United States' new rule in this case can be cabined only to where a mandatory sentence is taken off the table. Well, I think that you yourself cabined it when you said that the difference is, one, there is some category of cases which do refer to process, to how a decision-maker makes a particular result. And another category of cases which refer to what we've called substance, which is what results are on the table, what category of punishment is on the table. And that's the difference between this and all the other kinds of things that you're mentioning. This is not about the how, or it's partly about the how. But there's also about what punishments are on the table. Well, I just have to push back on the premise a little bit. Our position is not that a substantive rule is about what punishments are on the table. A substantive rule is about whether a State categorically no longer has the power to impose a category of punishment. Here it's clear from the Miller opinion and from the Graham opinion that the relevant category is life without parole. The State still has the ability to impose that punishment. And that's what — that's a sharp distinction from what a procedural rule is. And the United States' new conception of what a substantive rule is would blur that. It would blur that. And it would call into question all the capital sentencing cases. And I heard a question, I don't remember which Justice asked it, about Booker. And my reaction to that is, but Booker as a matter of the Sixth Amendment made a sentencing guideline nonmandatory, and it surely opened up new sentencing outcomes. And so by what reason could a Federal habeas petitioner now not say under the United States' new test, Booker is now retroactive, or Alleyne for that matter? Alleyne overturned the mandatory minimum under the Sixth Amendment, opening up new sentencing outcomes. Why couldn't a Federal defendant on Federal habeas say, now I ought to get the benefit of that rule retroactively? Our position is those cases, Booker, Alleyne, Apprendi, are clearly procedural. As this Court explained in Summerlin, Sura v. Summerlin, they're clearly procedural under the Tiede-Rubert. And what the United States would do is blur those categories. If there are no further questions. Roberts. Thank you, counsel. Mr. Bernstein, you have three minutes remaining. What this fantastic discussion has shown is why the Court, as it always has in the past, should keep the Teague exceptions a matter of equitable discretion rather than constitutional requirement. The Court has much more freedom, generally speaking, on a matter of equitable discretion than it does on constitutional requirements. There's no way to look at the prior precedence of the Court in Teague and any of those courts to say, oh, here's what our equitable discretion is. The only time you get retroactivity is when the Constitution requires it. That would have been a really short opinion, and that was not that. Now, to turn quickly to the cases that have been cited. The critical difference between this case on the one hand and Merrill Dow and three affiliated tribes on the other hand is that jurisdiction under this statute is question by question under Murdoch. In Merrill Dow, the question of whether the defendant's conduct had violated the federal drug labeling laws was a federal question. The Court never would have gone on to say, and we're also going to federalize the remedy. We're going to decide whether it's lost profits or out-of-pocket costs. Similarly, in three affiliated tribes, there was no question that there was a federal statute that limited state court jurisdiction. The only issue was the scope of that statute. Here we have the opposite. There is no question that the federal statute does not apply to the state court, and yet people say you should decide the scope question even though the underlying issue may be one of state law. And then finally, to the Solicitor General's new cake-and-eat-it-too argument that there's going to be review in this Court and de novo review on habeas. The statutory language in 2254d is pretty broad. Quote, any claim that was adjudicated on the merits in state court proceeding. The only claim in this case is remedy. This case was filed after Miller was decided. The only issue in this case is redress. And it would be a very wonderful turn if you could say on the one hand that 2254d doesn't apply, but on the other hand, 1257 applies when it requires a, quote, right claimed under Federal law, which gets to your question, Justice Kagan. Is it enough that a state court says we voluntarily want to be bound? And the best answer to that is not only in the cases I would recommend Moore, which is cited in Merrill Dow, which goes out of its way to show how Federal law is binding on the intrastate commerce conduct in that case before saying the Court could review it, but it's also plain in the language of the Supremacy Clause. Binding Federal law means binding in all 50 States. And that's why the statute also says right under Federal law. Thank you.  Thank you, counsel. And, Mr. Feisantz, you have 3 minutes remaining. Your Honors, I'd like to make two quick points. First of all, in jurisdiction. Resolving this case under Teague avoids the serious constitutional question of whether due process requires retroactivity for Miller. My second point on the merits. Miller said that juvenile homicide offenders should not have to die in prison with no chance for rehabilitation and no consideration of youth. That important rule changed the substantive outcomes available. Indeed, this Court said that life without prison should be uncommon. The individual sentenced before Miller that remains about 1500 deserve a chance at redemption. Thank you. Thank you, counsel. Mr. Bernstein, the Court appointed you as an amicus curiae to brief and argue this case against this Court's jurisdiction. You have ably discharged that responsibility for which the Court is grateful. The case is submitted. Thank you.